UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MICHELLE HUNTER,

                              Plaintiff,

        v.                                              **DECISION AND ORDER**
                                                        20-CV-639S

EQUIFAX INFORMATION SOLUTIONS, LLC,
TRANS UNION, LLC,
VERIZON COMMUNICATIONS, INC.,
KAY JEWELERS, and
ALLY FINANCIAL INC.,

                              Defendants.

## I. INTRODUCTION

Presently before this Court is Defendant Ally Financial Inc.'s motion to dismiss Plaintiff Michelle Hunter's complaint, which alleges two claims under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, et seq.  Hunter's claims against all other defendants have been settled or voluntarily dismissed, leaving Ally as the only remaining defendant.  For the reasons stated below, Ally's motion to dismiss is granted, and Hunter is granted leave to file an amended complaint.

## II. BACKGROUND

By implication, Hunter alleges that she at one time disputed her auto-finance account with Ally.  See Complaint, Docket No. 1, ¶ 8 (alleging that "Plaintiff *no longer* disputes [her account with Ally]" (emphasis added)); Defendant's Memorandum of Law, Docket No. 28, p. 1 (representing that Hunter had an auto-finance account with Ally).  Hunter further alleges that she no longer disputes that account.  Id.

1

On March 20, 2020, Hunter obtained her Equifax and Trans Union credit disclosures and saw that they included notations that she disputed her Ally account. Id. ¶ 9. One week later, Hunter sent a letter[1] to Equifax and Trans Union requesting that they remove the notations that her account with Ally was in dispute. Id. ¶ 9. Equifax and Trans Union forwarded Hunter's "consumer dispute"[2] (presumably Hunter's letter) to Ally, and Ally received it from them. Id. ¶ 10. Thereafter, Ally verified to Equifax and Trans Union that its reporting of Hunter's dispute with her Ally account was accurate. Id. ¶ 12.

Hunter obtained her Equifax and Trans Union credit disclosures again on May 14, 2020. Id. at 13. Those disclosures "showed that Equifax, Trans Union and [Ally] failed or refused to remove the notation of account in dispute."[3] Id. at 13.

Hunter alleges that Ally violated the FCRA by negligently and willfully failing to conduct a proper investigation into the "consumer dispute" it received from Equifax. Id. ¶¶ 39-45 (alleging a negligent violation of 15 U.S.C. § 1681s-2(b)); 46-50 (alleging a willful violation of 15 U.S.C. § 1681s-2(b)). More specifically, Hunter alleges that Ally failed to (1) consult the Credit Reporting Resource Guide, (2) review all relevant information available to it and provided by Equifax, and (3) direct Equifax to remove the notation of account in dispute. Id. ¶¶ 11, 41, 48. Hunter further alleges that Ally's

---

[1] This letter is not included with the complaint.

[2] The complaint does not define this term.

[3] It is unclear from this allegation whether the original notations Hunter observed in her March 20, 2020 disclosures remained, or whether the disclosures now contained new notations indicating that Equifax, Trans Union, and/or Ally refused to remove the original notations.

violations of the FCRA have caused her damages, mental anguish, suffering, humiliation, and embarrassment.  Id. ¶¶ 14, 43, 49.

### III. DISCUSSION

Ally seeks dismissal of Hunter's complaint for failure to state claims upon which relief can be granted under Rule 12 (b)(6) of the Federal Rules of Civil Procedure.  It argues that Hunter's complaint fails to state a plausible claim for relief as a matter of law.  Hunter opposes Ally's motion, and in the alternative, seeks leave to re-plead, if necessary.

**A.  Legal Standards**

**1.  Rule 12 (b)(6)**

Rule 12 (b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12 (b)(6).  The rule is "designed to test the legal sufficiency of the complaint, and thus does not require the Court to examine the evidence at issue."  DeJesus v. Sears, Roebuck & Co., 87 F.3d 65, 69 (2d Cir. 1996). The question, rather, is whether the complaint meets the applicable pleading standards. See Berry v. Tremblay, 9:20-CV-177 (DNH/TWD), 2021 WL 1575951, at *2 (N.D.N.Y. Apr. 22, 2021) ("The [Rule 12 (b)(6)] motion tests the legal sufficiency of the complaint and whether it conforms to Rule 8 (a)(2) of the Federal Rules of Civil Procedure.").

Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim.  Fed. R. Civ. P. 8 (a)(2).  But the plain statement must "possess enough heft to show that the pleader is entitled to relief."  Twombly, 550 U.S. at 557.  When determining whether a complaint states a claim, the court must

construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor.  See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).  Legal conclusions, however, are not afforded the same presumption of truthfulness.  See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  Labels, conclusions, or "a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.  Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged.  Iqbal, 556 U.S. at 678.  The plausibility standard is not, however, a probability requirement: the well-pleaded allegations in the complaint need only nudge the claim "across the line from conceivable to plausible."  Twombly, 550 U.S. at 570.

A two-pronged approach is thus used to examine the sufficiency of a complaint. This examination is context specific and requires the court to draw on its judicial experience and common sense.  See Iqbal, 556 U.S. at 679.  First, statements that are not entitled to the presumption of truth, such as conclusory allegations, labels, and legal conclusions, are identified and stripped away.  See id.  Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief."  Id.  "Where the well-pleaded facts

do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to state a claim.  Id.

In considering a motion to dismiss under Rule 12 (b)(6), "a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  Leonard F. v. Isr. Disc. Bank of N.Y., 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted); see also Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). "[W]here a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect," thereby rendering the document "integral to the complaint."  Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 152–53 (2d Cir. 2002)).  But even where a document is "integral" to the complaint, it cannot serve as the basis for dismissal unless there is no dispute as to its authenticity, accuracy, and relevance.  See Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006) (internal citations omitted).

### 2.  Fair Credit Reporting Act:  15 U.S.C. § 1681s-2(b)

Recognizing the importance of fair and accurate credit reporting to the nation's banking system, Congress enacted the FCRA to "insure [sic] that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy."  15 U.S.C. § 1681 (a); see also Longman v. Wachoia Bank, N.A., 702 F.3d 148, 150 (2d Cir. 2012) ("The [FCRA] regulates credit

5

reporting procedures to ensure the confidentiality, accuracy, relevancy, and proper utilization of consumers' information."). To that end, the FCRA "places distinct obligations on three types of entities: consumer reporting agencies, users of consumer reports, and furnishers of information to consumer reporting agencies." Redhead v. Winston & Winston, P.C., No. 01-CV-11475 (DLC), 2002 WL 31106934, at *3 (S.D.N.Y. Sept. 20, 2002); see also Sprague v. Salisbury Bank & Tr. Co., 969 F.3d 95, 98 (2d Cir. 2020).

This case involves furnisher liability. See 15 U.S.C. § 1681s-2. Though not statutorily defined, "furnishers" have been recognized as entities "that transmit, to credit reporting agencies, information relating to debts owed by consumers." Barberan v. Nationpoint, 706 F. Supp. 2d 408, 426 n. 11 (S.D.N.Y. 2010) (internal quotation omitted). A furnisher's responsibilities under the FCRA are set forth in 15 U.S.C. § 1681s-2. Those responsibilities broadly include providing accurate information and correcting inaccurate information, see § 1681s-2 (a), and reasonably investigating disputed or incomplete information, see § 1681s-2 (b). See also Sprague, 969 F.3d at 98-99.

More specifically, this case involves a furnisher's liability for failing to conduct a reasonable investigation under 15 U.S.C. § 1681s-2 (b). "Consumers have the right to dispute any information reported to a credit reporting agency." Longman, 702 F.3d at 150-51 (citing 15 U.S.C. §§ 1681g (c)(1)(B)(iii), 1681i (a)(1)(A), 1681s-2 (a)(8)). "If a dispute is filed with the [credit reporting] agency, both the agency and the furnisher of that information have a duty to reasonably investigate and verify that the information is

accurate." Id. (citing 15 U.S.C. §§ 1681i (a)(1)(A), 1681s-2 (b)).  "While the Second Circuit has not yet defined the specific contours of a furnisher's investigatory responsibility under this statute, courts both within and outside the Circuit have assumed a reasonableness standard for judging the adequacy of the required investigation." Dickman v. Verizon Comms., Inc., 876 F. Supp. 2d 166, 172 (E.D.N.Y. 2012).

Under the statute, a furnisher's obligation to investigate arises only when it receives notice from a consumer reporting agency—not directly from the consumer— that a consumer disputes the accuracy of the furnished information.  See 15 U.S.C. § 1681s-2 (b)(1) (providing that a furnisher's duty to investigate arises "[a]fter receiving notice pursuant to section 1681i (a)(2)," which is the statutory provision requiring a consumer reporting agency to notify a furnisher of a dispute); Sprague, 969 F.3d at 99 ("The statute is clear that the notice triggering these duties must come from a [consumer reporting agency], not the consumer.").

Upon receiving notice of a dispute from a consumer reporting agency, a furnisher must (1) investigate the disputed information, (2) review all relevant information received from the consumer reporting agency, (3) report the results of the investigation to the consumer reporting agency, (4) report any inaccurate or incomplete information to all consumer reporting agencies to which the information was provided, and (5) modify, delete, or permanently block the reporting of inaccurate, incomplete, or unverifiable information.  See 15 U.S.C. § 1681s-2 (b)(1) (A)-(E); see also Sprague, 969 F.3d at 99;

Warren v. Mariner Fin., LLC, 16-CV-221V, 2020 WL 4676658, at *3-4 (W.D.N.Y. Aug. 12, 2020).

Section 1681s-2 (b) includes a private right of action for a furnisher's failure to comply with its investigatory obligations.  See Comunale v. Home Depot, U.S.A., Inc., 328 F. Supp. 3d 70, 80 (W.D.N.Y. 2018) ("the FCRA does provide for a private cause of action pursuant to § 1681s-2(b)") (citations omitted).  To state a claim under 15 U.S.C. § 1681s-2 (b), a plaintiff must first allege that the defendant is a furnisher of information subject to the statute.  See Perez v. Experian, 20-CV-9119 (PAE) (JLC), 2021 WL 4784280, at *6 (S.D.N.Y. Oct. 14, 2021).  The plaintiff must then allege that "(1) the furnisher received notice of a credit dispute from a credit reporting agency, and (2) the furnisher thereafter acted in 'willful or negligent noncompliance with the statute.'" Markovskaya v. Am. Home Mortg. Servicing, Inc., 867 F. Supp. 2d 340, 343 (E.D.N.Y. 2012) (quoting Redhead, 2002 WL 31106934, at *5); see also Minner v. Navient Corp., 18-CV-1086S, 2020 WL 906628, at *12 (W.D.N.Y. Feb. 25, 2020); Jackling v. HSBC Bank USA, N.A., 15-CV-6148G, 2019 WL 162743, at *4 (W.D.N.Y. Jan. 10, 2019).

As to damages, the plaintiff must ultimately prove either "(1) that the defendant's negligent violation caused him actual damages, in which case the plaintiff is entitled to recover those actual damages, or (2) that the defendant's violation was willful, in which case the plaintiff is entitled to recover actual damages, if any, or statutory damages, as well as punitive damages."  Jackling, 2019 WL 162743, at *7 (citing Ritchie v. N. Leasing Sys., Inc., 14 F. Supp. 3d 229, 234, 240 (S.D.N.Y. 2014).  Actual damages may include both credit-related economic damages and emotional damages, the latter of

which "may be freestanding and need not arise from the denial of credit, but they often do." Jackling, 2019 WL 162743, at *7 (citations omitted).

**B. Ally's Motion to Dismiss**

Ally argues that Hunter fails to state any plausible claims for relief as a matter of law for two reasons. First, Ally maintains that Hunter fails to adequately allege that she directly notified Ally that she no longer disputed her account. Second, it contends that Hunter fails to plausibly allege that she suffered any damages. In response, Hunter insists that her claims are sufficiently pleaded, but alternatively, seeks leave to amend her complaint to cure any deficiencies.

Having thoroughly reviewed the complaint and the parties' submissions, this Court finds that Hunter's complaint is subject to dismissal for several reasons. First, Hunter fails to allege that Ally is a furnisher of information as contemplated under the FCRA. See Perez, 2021 WL 4784280, at *6. The inclusion of Ally with two other entities in a collective shorthand to "Furnishers" in ¶ 7 of the complaint is not a factual allegation and is insufficient to allege that Ally is a furnisher of information.

Second, as it relates to Ally's argument that Hunter's claims must be dismissed because Hunter fails to allege that she *directly* notified Ally that she no longer disputed her account (as opposed to notifying a credit reporting agency), this Court finds that it need not parse to whom notice is required at this time because Hunter fails to allege that she *ever* notified *any* entity that she wished to withdraw her initial report of a dispute with her Ally account. Hunter's allegation in ¶ 8 of the complaint that she "no longer disputes the Errant Tradelines" lacks temporal context and fails to adequately

9

allege that Hunter affirmatively acted to withdraw her dispute.  It is unknown whether Hunter "no longer disputes" her account as of the date of the complaint or as of some date before, for example.  And while Hunter writes in her memorandum that "on or about March 27, 2020, Plaintiff submitted letters to Equifax and Trans Union stating that she no longer disputed the ALLY account and wanted the dispute notation removed from the ALLY tradeline," that allegation appears nowhere in the complaint, nor does the complaint attach the letters, as Hunter suggests.  <u>See</u> Plaintiff's Memorandum of Law, Docket No. 33, p. 3 (citing nonexistent "Exhibits 1, 2" of the complaint).

As a result of these omissions, Hunter's claims are implausible.  As pleaded, Hunter alleges that she at one time disputed her Ally account (Complaint, ¶ 8), that she obtained her credit disclosures and saw the notation that her Ally account was in dispute (<u>id.</u> ¶ 9), that she requested that Equifax and Trans Union remove the notation that the account was in dispute (<u>id.</u>), that Equifax and Trans Union forwarded that request to Ally for verification of whether the account was in dispute (<u>id.</u> ¶ 10), and that Ally verified that the credit disclosure was accurate because Hunter had in fact disputed her account (<u>id.</u> ¶ 12).  Since this scenario does not give rise to any claims against Ally under 15 U.S.C. § 1681s-2 (b), Hunter's complaint is subject to dismissal under Rule 12 (b)(6).  <u>See</u> <u>Ngambo v. Chase</u>, 20-CV-2224, 2020 WL 1940553, at * 3 (S.D.N.Y. Apr. 22, 2020) ("The FCRA does not require that a furnisher of information delete a consumer's disputed account, but rather simply requires the furnisher of information to investigate and to report information from the investigation." (quotation marks and citation omitted)).

10

As it relates to Ally's contention that dismissal is required because Hunter fails to sufficiently allege damages, this Court is not convinced.   For both her negligent and willful violation causes of action, Hunter alleges that Ally's failure to conduct a reasonable investigation into her dispute caused her to suffer damages, mental anguish, suffering, humiliation, and embarrassment.   (Complaint, ¶ 43 (negligent violation), ¶ 49 (willful violation).)   Hunter also alleges that she suffered damages to her credit in the form of lost favorable credit terms, and that the mental and emotional damages she sustained were caused by Ally's failure to investigate and correct the errors in her credit file.   (Complaint, ¶ 14.)   If the complaint was not otherwise deficient, these damages allegations would be sufficient at the pleading stage.

Accordingly, for the reasons stated above, this Court finds that Hunter's complaint fails to state claims upon which relief can be granted and is therefore subject to dismissal.

### C. Leave to Amend

When presented with a request to amend pleadings, the federal rules dictate that courts "freely give leave when justice so requires."   Fed. R. Civ. P. 15 (a)(2); see also Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962); Ellis v. Chao, 336 F.3d 114, 127 (2d Cir. 2003).   The decision whether to grant leave to amend is within the court's discretion.   John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp., 22 F.3d 458, 462 (2d Cir. 1994) (citing Foman, 371 U.S. at 182); cf. Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993) (court's decision on whether to allow amendment is reviewed for abuse of discretion).   Refusal to grant leave, however,

must be "based on solid ground."  <u>Oliver Sch., Inc. v. Foley</u>, 930 F.2d 248, 253 (2d Cir. 1991) (internal citations omitted).  Factors such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment" have been identified by the Supreme Court as grounds for denial.  <u>Foman</u>, 371 U.S. at 182; <u>Cortec Indus., Inc. v. Sum Holding L.P.</u>, 949 F.2d 42, 48 (2d Cir. 1991).  Here, none of the factors warranting denial of leave to amend are present, and Hunter may be able to state viable claims if she is able to cure the pleading deficiencies identified above.  Leave to amend will therefore be granted.

## IV. CONCLUSION

For the reasons stated above, this Court finds that Hunter's complaint must be dismissed under Rule 12 (b)(6) for failure to state claims upon which relief can be granted, and that Hunter should be afforded leave to file an amended complaint.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendant Ally Financial Inc.'s Motion to Dismiss (Docket No. 27) is GRANTED.

FURTHER, that Plaintiff is granted leave to file an amended complaint within 14 days of the entry date of this decision.

FURTHER, that if Plaintiff fails to file an amended complaint within 14 days of the entry date of this decision, the Clerk of Court is directed to CLOSE this case without further order of this Court.

SO ORDERED.

Dated:        November 12, 2021
              Buffalo, New York

                                              s/William M. Skretny
                                          WILLIAM M.  SKRETNY
                                          United States District Judge